The next case today is National Labor Relations Board v. Maine Coast Reg'l Health Facilities, Appeal Number 20-1589. Attorney Randlett, please introduce yourself on the record. Good morning again, Your Honors. My name is Joshua Randlett. I'm on behalf of the respondent, Maine Coast Reg'l Health Facilities, and before I get started with the court's permission, I would like to reserve three minutes for rebuttal, please. Yes, Mr. Randlett, you may. Thank you, and may it please the court. One of the fundamental questions in this case is whether there is any meaningful limitation on what counts as concerted activity for purposes of the National Labor Relations Act. In this case, over a course of several weeks, the employee read a series of newspaper articles about her workplace. Weeks later, and in response to the newspaper articles that she had read, the employee, in the privacy of her own home, off duty, and without any involvement or even any knowledge by any of her fellow co-workers, penned her own letter to the editor of the newspaper. Given the facts that we have in the record, the employee's act of writing her letter to the editor cannot be said to have been concerted activity with any of her co-workers under any reasonable interpretation of that word, and the board's determination that her conduct was concerted is not supported by the case law. The board's determination that this activity was concerted hinged really on two main findings, neither of which are supported by substantial evidence in the record. The first finding is that Ms. Young, the employee, quote, was in fact a party to prior discussions with other employees regarding their concerns over the staffing shortages and physician resignations that she discussed in her letter, end quote. Well, if we look very closely at the record, the sum total of the evidence that relates to that finding is as follows. One, she testified that there was, quote, word of mouth, end quote, that several doctors were leaving the hospital, quote, people talked about, end quote, the fact that doctors were leaving. There was, quote, general talk about the doctors leaving, end quote, and that the CNA's nurse assistants, quote, would say that they had way too many patients to care for, end quote. That's it. That's what we have in the record. Ms. Young, when she testified, chose her words very carefully in her testimony, and she never once testified that she herself actually participated in or had any conversations with anybody in the workplace about any of these issues. The general counsel, as the party with the burden of proof here, never followed up on or clarified that point, and there was no other witness that came in to testify that they had ever had any of these sorts of discussions with Ms. Young. The testimony in the record is simply not substantial evidence to support the finding that she was, in fact, a party to discussions, as opposed to, perhaps, just overhearing things, but not actually being an active participant in any discussions. It's sort of a constrained view of normal human interactions that you're asking us to infer must have taken place. You paint her sort of as a secret eavesdropper, hiding around the corner, listening to conversations. Isn't the board entitled to read what she was saying as that she was in those conversations? I don't think that's a reasonable inference for the board to make, Your Honor. This is a hospital setting. There are lots of people, lots of employees that all work in general areas. So, number one, it's not out of the bounds reasonableness to think that she might have overheard conversations between others that she was not a party to, but I don't think it's a reasonable inference for the board to conclude that she was a party. I would say that's speculative. Because the inference that she was a party on the balance of what we have for testimony in the record is just as likely as the inference that she was not a party and that she merely overheard things. She was asked, did you have any conversation with other hospital employees before you wrote this letter to the editor? She says, well, of course. There was just a general talk about the doctors leaving, and it was very upsetting for everybody. That well, of course, would seem to suggest she was part of that conversation, doesn't it? That's an inference. Another inference is that, of course, there were general conversations as opposed to, of course, I was a part of those conversations. I think that, at most, what we these discussions, I don't think it rises to the level of the substantial evidence standard. Let me ask you, in Myers, the board created a definition of concerted activity that had two parts. It said that the activity that the board would require that the activity be engaged with or on the authority of other employees and not solely on behalf of the employee himself. This was clearly not on the authority of other employees, so it would fall under the with side of that, and it was clearly not on behalf of the employee himself. Why isn't it reasonable interpretation by the board of the words with employees that this kind of engagement is enough to satisfy that side? It seems like what you want us to say is that you want to change the or to and. It has to be with other employees and on their authority as if she had to have the authority or be doing it on behalf of them explicitly. Your Honor, I think that Myers is very helpful for us to contrast or to actually compare what in Myers, Mr. Prill, the employee, the evidence in that case was not that he was a party to any conversations. Actually, the evidence was that he overheard a fellow employee saying something to somebody else. In Myers, the very case that set forth the analysis that we now use, they said that that was not under any reasonable construction concerted activity. I think, number one, that's key finding. Even if we were to agree that there is evidence that Ms. Young did engage in these conversations, which of course we dispute, but even if we accept that as true, the next step in the inquiry that the board made was that her letter to the editor was a logical outgrowth of any of these discussions that she had in the workplace. There's no evidence in the record about that. In fact, the evidence is completely to the contrary because Ms. Young testified very directly and very succinctly that her motivation for writing the letter to the editor was because she wanted to respond to prior newspaper articles that she had read. That was what sparked her letter to the editor. Not that it had anything to do with anything that she had about or overheard in the workplace. She wanted to respond to newspaper articles. The text of the letters that she wrote certainly suggests it has something to do with the conversations that occurred before because that's what the letter is about. Her letter is a response to a series of articles that she had read. She's not talking about any of her prior conversations in her articles. She doesn't describe what was being said at the hospital in the letter? She doesn't talk about any of those interactions in her letter to the editor. She says, on this date, the first article came out. I agree with that. On the next date, the next article came out. I thought she referenced in the letter the concerns that were present among staff at the hospital. Well, she says that doctors leaving was causing concern among staff and patients in the care. Why isn't that a way of saying that the most immediate cause of her writing the letter was the prior articles in the newspaper? In terms of logical outgrowth, there's every reason to think it would be reasonable to say that her own experience hearing what the concerns were at the hospital led her to read those articles and think they deserve a response as opposed to just somebody who had no idea what was going on at the hospital. That seems like it's at least enough to say it was a logical outgrowth of it. It wasn't predetermined by it. It wasn't the only cause of it, but it was an outgrowth of her knowledge of that information. I think the best evidence we have on that is her saying that she wrote these articles to respond to what she had read, not because she wanted to inform the community of what other communications were going on at the hospital or what other employees were talking about the hospital. She wanted to give her two cents with respect to an article or a series of articles. Mr. Randall, I had a question for you. The board found a violation of 8A1 concerted activity and 8A3 union activity. Does it make any difference that they found both violations or does one do the job? In other words, if we were to agree with you on one but not on the other, do we need to reach the other? Certainly, in terms of the remedy that would result from this case in terms of reinstatement or what have you to the employee or posting notices, if there's a finding on one of those two counts, then certainly there will be a remedy that flows there. I do think that my client number one is entitled to make sure that if there are findings on both counts, that both counts are proper under the record and under the law. If one of those counts was mistaken, I think that we ought to have that clarified. I think that to an extent, whether there's a finding under 8A1 or 8A3, depending on how things go, could alter to some extent a remedy in terms of notices to be posted or what the case may be. I do want to talk a little bit about this concept of union activity. Before you get there, I just want to tie up one loose end from the discussion of concerted activity. If the record supports the conclusion that she did have the conversations that you say the record shows, all she did was overhear it, do you then have an argument that that alone is not enough to make it concerted? I do think so. I didn't see that in your brief. What's that argument? Well, I believe we did because we addressed the Myers standard. Even if she had engaged in these letters, if she engaged in that act on the authority of other employees, which there's no evidence of that, she engaged in that act with other employees, the testimony was I didn't talk about this letter to anybody else. Nobody knew I was writing it. Nobody had any idea about it. That part of the Myers 2 test would be out. The second part of the Myers 2 test would be if it seeks to initiate or prepare for group action. There's no evidence of that. You can finish your answer. There's no evidence that Ms. Young's letter to the editor contemplated any further future conduct or group action. On this point, I'm just trying to understand what the legal contention is. If you say the statute itself precludes this interpretation. In your view, it's slightly beyond what Myers said in its test, but now it's a new board case saying this is concerted. What's wrong with that? The board isn't stuck with Myers forever. I think that at the very least in the case law, even the Myers case law, and there's a citizens case from the DC circuit that says if a board, an administrative agency like the board, is not going to follow or is going to depart from or expand upon its prior case law, they at least need to talk about that and address it and explain why they're doing that. In our decision, the does, it only does it in passing, but there's certainly no discussion in there about here's the Myers prong one, part two, part three, and why we think that this satisfies all those criteria. Could I just quickly follow up on that? It's important to remember that Myers, Myers one and Myers two, the board completely reversed its position that it had previously held in Alleluia and went back to the standard that it applied pre-Alleluia, and so to Judge Barron's point, if the board wants to put a gloss onto Myers, which was really two cases which involved a dialogue with the DC circuit, and it wants to inch the standard back a little bit toward Alleluia or to simply say that the burden isn't that high in terms of what constitutes activity with other employees, it seems to me that's something that deserves a lot of deference from this court. No? Your Honor, I understand what you're saying. I think that the board's interpretation of its own test and its case law is entitled to deference, but here in Myers two, we have a very clear formula of what needs to be proved to show when individual activity can be deemed concerted, and the board, in our case, doesn't even run through that to say, here's why we think this satisfies it or it doesn't satisfy it, or here's where we think Myers went too far, didn't go far enough, and under the auspices of this case, we think that we want to move Myers from A to B or A to C or whatever the case may be, and here's why. There's just no discussion whatsoever about that in this case. Thank you, Mr. Randlett. Thank you. Mr. Randlett, you may mute at this time. Attorney Weitz, you can unmute at this time and introduce yourself to the record, please. Good morning. May it please the court, Eric Weitz on behalf of the National Labor Relations Board. Regarding the primary unfair labor practice, in this case, the unlawful discharge of Ms. Young, it might be most helpful, based on the initial questioning, for me to start with the question of protected concerted activity. First, just as a general matter with regard to a legal standard, I think following up on a question that Judge Smith, you asked earlier, I would just point out that the board's standard for concerted activity under the Myers cases is not limited to the definition in Myers 1 of activity engaged on the authority or with other employees. In Myers 2, the board made very clear that an individual employee acting alone can engage in conduct that is concerted within the meaning of Section 7. It provided some non-exhaustive categories or rules, one of which is when an individual employee brings, quote, truly group complaints to the attention of management or in certain contexts, such as this one, to outside third parties in an attempt to raise those concerns and to pressure the employer into addressing them. So, there's many cases where the board has applied its Myers standard in such situations, which we cite in our brief and are cited in the board's decision. And so, in this case, the initial basis for the board's finding of protected concerted activity was the fact that Ms. Young was party to genuine complaints of other employees that were shared between herself and her coworkers. And part of the evidence supporting that finding by the board is the both about the position departures, which she testified everyone was talking about and everyone was upset about, as well as the nurse staffing issues, which she clearly testified nurses who she worked with on a daily basis would tell her almost every day that they were understaffed. So, there is, as an initial matter, sufficient evidence at a minimum for the board to have reasonable inference that she herself was party to these conversations. But turning to the employer's argument that she was a passive listener, even assuming contrary to the board's findings that that were the case, it's as a legal matter irrelevant because even if we assume that Ms. Young merely eavesdropped on these conversations or merely overheard them, that would still be sufficient to establish that she was aware that other employees at the hospital shared her own long-standing complaints and grievances about perceived understaffing issues. I'd also point out that there's testimony, which the employer does not dispute, that Ms. Young was aware that the nurses were publicly protesting this issue within the facility. For example, they had a practice of when a nurse left her employment and was not replaced, they would put a note up on her locker in the hospital, and Ms. Young testified that she was aware of that. So, the board would submit that there's more than substantial evidence. There's very strong evidence that Ms. Young was aware of genuine group complaints shared with other employees at the hospital, and under board law and this court's law, that is sufficient to establish concerted activity. I'd point, for example, to the Mountain Desert Island Hospital case, which is, in many respects, very similar to the facts here. In that case, I guess there was more robust evidence of back-and-forth conversations, but as the court's opinion indicates, the operative fact is that the employee in that case, who on his own initiative wrote a letter to the editor of the local newspaper without consulting any co-workers specifically about the letter, was continuing or expressing these group complaints, and under board law and the Meijer standard, that is sufficient to establish protected concerted activity. Mr. Weitz, in Mountain Desert Island, wasn't it a bargaining unit employee that wrote? I don't recall, Your Honor, that may be the case, although I'm not sure that that factual distinction would be relevant to the concertedness inquiry in particular, because you can have concerted activity between bargaining unit employees or between employees inside and outside a bargaining unit. In fact, you can have concerted activity even between employees who work for different employers under board law. So, assuming that was the case in Mountain Desert Island Hospital, I still think that the facts are very similar with the facts here with regard to concertedness. Well, in the other cases that are discussed in the briefing, the Mountain Desert Island Valley Hospital, a number of other cases that involve engaging the media in the subject of a workplace dispute. The difference, I think, between those cases and this case is just that, that it's either bargaining unit employees or union officials that are trying to utilize the media in the context of a collective bargaining dispute, whether they're negotiating a contract or it's a something during the term of the contract. This case seems just a little bit different than those because, and I grant you that a non-bargaining unit employee, I think, under Myers could be engaged in concerted activity with a bargaining unit employee, but the Myers standard seems to contemplate some kind of connection or nexus between the employee who's engaging in the activity and the bargaining unit at the union that's having the ongoing issue with the employer, and I think that's what makes this case just a little bit different than those cases. So, I guess, in a way, the board seems to be taking a step back toward the Alleluia standard. I'm not saying going all the way back, but it seems to be taking a step back toward that standard in this case. Well, your honor, on the last point, I would disagree because I think the key distinction between Myers and the Alleluia case to provide a hypothetical on the facts of this case, if the facts of this case were that there was no evidence that any other employee at the hospital shared Ms. Young's concerns, but on her own initiative, she individually thought that there were staffing issues. Under the board's prior standard in the Alleluia case, the board essentially held that as long as an individual employee raises an issue that should be of common concern, that the board would find that was sufficient to establish concerted activity. And the thrust of the change in board law in Myers is that the board said that is not enough. So, for example, if an individual employee like Mr. Prill in that case contacts a government facility to have a safety inspection of his truck because that's something that other employees working for the employer should have a concern about, it's a clear issue that other employees presumably would be concerned about, that is not sufficient evidence of concerted activity. However, in Myers 2, in part following the Supreme Court's opinion and city disposal, the board made very clear that if there is evidence that an employee is aware of truly group complaints and the individual employee acts on his own initiative without addressing any other co-workers, that is sufficient, depending on the facts, to establish concerted activity. So, I don't think that the board is really moving at all from well-established board precedent applying Myers and intervening. Well, that's why I said not all the way back, but in city disposal, was it a, I just don't recall, was it a non-bargaining unit employee who was engaged in the action or was it someone connected with the bargaining unit employee engaged in with Section 7 concerns? Well, the facts of city disposal, Your Honor, are not really relevant to this case. That involved an employee raising a collectively bargained right, but the relevant portion of the Supreme Court's opinion is there's a section in that opinion where the Supreme Court is actually interpreting the language of Section 7 and the Supreme Court is clearly stating that an individual employee acting on their own can engage in conduct that is concerted within the meaning of the language of Section 7, but the board here is certainly not relying primarily on city disposal. The board's relying instead not only on the Myers 2 case, but on many board cases since then that make clear that an individual employee, if they're aware of shared complaints, can act on their own to try to resolve those complaints or advance the issue to the employer or, in certain circumstances, to the public. And returning to part of your earlier question, Judge Smith, it is true that in this case, Ms. Young was not part of the bargaining unit, but I'd make two points. First of all, in the board's decision in this case, there is a footnote, it's actually in the administrative law judge's opinion as affirmed by the board, where the administrative law judge specifically points out that with regard to protected concerted activity, as with protected union activity, that it doesn't matter that the employee acting is attempting to assist bargaining unit employees when that employee is not part of the bargaining unit. Secondly, I just point out as a factual matter that Ms. Young, and this I think goes to your question as well, Judge Smith, that there is an additional prong to the board's protected concerted activity test, which is that activity must be for purposes of mutual aid or protection, which is separate from the concertedness prong. And that is more about the substance of the complaint and whether the employees are attempting to prove their working conditions together. That is not disputed in this case. The employer has not raised a challenge to that finding. Moreover, the facts demonstrate that Ms. Young had a direct interest in these collective grievances because as part of her job, she worked directly on a daily basis with the nurses. And in fact, when the nurses were understaffed, it affected her own work so that she would have to, for example, take up nursing duties on an ad hoc basis. In fact, she had held this concern about staffing levels for many months. The evidence shows that she had actually contacted her supervisors months earlier and urged them to allow her to assist with the nursing because she was concerned about the staffing levels. So this is a case where although Ms. Young was not part of the bargaining unit, the actual workplace dispute at issue such as the staffing levels affected Ms. Young just as it affected the bargaining unit nurses who had already created and presented this petition to the employer. Mr. White? Yes, Your Honor. Yes, you're going to run out of time soon and you may want to address the there's an argument in the brief that seems to have some traction that EMSS is not itself a party to this and the board overreached by applying the remedy that the amendment did not make it a party. It simply identified it as a sole member. Yes, Your Honor. Well, I think that argument does not hold a lot of water if the court actually looks at the testimony or the transcript, excuse me, from the unfair labor practice hearing when this oral motion was made. Well, I did look at that. I did look at that and general counsel tried to get more of an amendment to make them a party. They went off and talked and they came back with an amendment that simply identified them as a sole member and the hearing officer noted that that didn't quite seem to do what general counsel had sought to do. Well, to be candid, Your Honor, I don't recall that in the transcript. I believe the initial dispute was that the counsel for the board's general counsel made a motion to amend the complaint expressly to include Eastern Maine health care systems for purposes of any resulting remedial order. There was an initial dispute about how to properly phrase that motion because there was a dispute about how, what the exact phrasing of the relationship between Maine Coast Memorial Hospital and Eastern Maine was under Maine non-profit corporation law, but I think it was clear at all times that the purpose of this motion was not simply to essentially meaninglessly change the caption, but to amend the complaint so that Eastern Maine was included, so that if there was an unfair labor practice order, it would also apply to Eastern Maine and the employer actively consented to that at the hearing. And as a result, the counsel for the board general counsel had no reason to think that this issue was still in dispute. And so, for example, the counsel for the board general counsel had no reason to allege a single employer relationship, which may have provided an alternative basis because the parties essentially consented to adding Eastern Maine to the complaint. If you want to add someone as a party to a complaint, it's very easy to do it. The board's done it thousands of times. It just has the word and or ampersand and joined someone as a party. It doesn't just say I'm suing ABC Corp, comma, whose parent is D Corp. That doesn't join D Corp as a party. Well, that was the dispute, your honor, about how to actually phrase the addition of Eastern Maine and the language that ended up the parties agreed upon was actually proposed by counsel for the employer, which was to designate. Sure, because they didn't want the parent joined. They're if that were the case, your honor, I think that would have been active deception on the part of the employer that it was the employer was essentially attempting to deceive counsel for the board's general counsel. Because if I can just finish quickly, it was it was very clear from the discussion at the hearing that the purpose of this amendment was to include Eastern Maine for purposes of any resulting order. And if I could just finish up. I'm sorry, your honor. Yes. Just got I just had two questions, one of which relates to this. Let's assume the parent wasn't joined as a party. Just for a second. The parents not appeal. Is it? Well, that that is part of the issue, your honor, and a point that we make in our brief to the extent that main coast is alleging that it does not represent Eastern Maine, and Eastern Maine is not a party, then main coast would not have standing to even raise this argument on Eastern Maine's behalf. That just seems like an odd feature of why the case if either they were a party, in which case remedies appropriate, or they weren't a party, in which case nobody who has an interest in objecting to the remedies before us, I'd sort of puzzled by that. So the second point is, if I could just turn to the Your opponent makes an argument with respect to 883 that I think equally applies to 8A1, but I don't read them to be making it as to 8A1, which was that the reason. I'm sorry. I'm sorry, your honor. Yeah, I'm sorry to interrupt. My connection briefly dropped, so I may have missed. The employer makes an argument as to 883 that I think equally applies to 8A1, but they don't seem to make it as to 8A1. But with respect to 883, their lead argument in the brief seems to be that the employer's reason for terminating the employee was not due to the specific content of her letter pertaining to anything related to union activity, even though the letter contained such stuff, but instead simply because it was critical of the hospital and it has a business-related reason for terminating employees who are critical of it. Does the ALJ's decision that the board affirms address that argument? Yes, it does, your honor, in two respects. First of all, the ALJ cites the well-established black-letter law that when an employer discharges or disciplines an employee solely for conduct that's alleged to be protected, the only material legal issue is whether that conduct is in fact protected. If we assume that it is protected activity. No, no, what I'm saying is that their argument is that they did not concede that they fired her solely for protected activity. They fired her for criticizing, but criticizing the company is not 8A3 protected, only union activity. And they are saying that we're not firing her for the union activity, we're firing her for the criticism. So what's the answer to that? Is that the race jest I know, your honor. And I think it's important to clarify that based on the arguments that the employer makes. The first response is that under board and Supreme Court precedent, an employer cannot parse what is and is not protected activity. Here, the protected activity was the act of sending the letter in total. And so if the board finds that submitting this letter to the editor was protected activity, an employer cannot say, yes, we discharge her for submitting this letter, but it wasn't because we opposed protected union activity. Can I just press on that? Because here's the hypothetical I have in my head that doesn't make total sense to me. If I've taken my lunch hour, and now having taken my lunch hour, I now take another hour to go to union activity. And you're now fired because you're away from work for an hour. I would think the employer would have it wasn't because she was doing union activities because she was away. Why isn't this like that? That's what I didn't quite follow. Well, if I'm if I'm construing your hypothetical, correct, your honor, if the if the situation is that an employee is engaged in union activity, and an employer says we're discharging you for that activity, such as being away, but it's not because it was union activities. Because for example, we have a workplace rule that we're applying uniformly. The Supreme Court held long ago, for example, in the Republic Aviation case, also the Washington Aluminum case that's cited in our brief, that an employer cannot, that's not a sufficient defense. If the evidence shows that protected activity in whole was a motivating factor for the discharge, that is a violation of the act. And an employer cannot say we were but it wasn't because we're opposed to unions. It was for some ulterior motive. Well, last verse, is that the dual? That's the mixed motive? Well, no, this, this case, your honor, is not a mixed motive case, because the only reason for the discharge was Miss Young's decision to send this letter, which the board found was protected as a whole. But if I could make one other quick point, responding to your question, regarding the right line argument that the employer raises, the mixed motive argument, as well as the res guest tie point that they make, it's important to point out that those arguments are ultimately irrelevant in this case, because as the administrative law judge noted, as affirmed by the board in footnote 14 of the decision, the res guest tie point is a counterfactual alternative. The board's primary finding is that the portions of the letter that the employer identifies as being the basis for the discharge, which is Miss Young saying that the hospital chairperson showed more allegiance to Eastern Maine than to the employees, and that hospital management was out of touch with the day to day work of the hospital, those are protected under any theory. So the employer has not identified any even allegedly unprotected portion of the letter, even assuming that the employer could parse out the letter in that way. So this is not a mixed motive case under any theory. And I'd point the court to the Mount Desert Island Hospital decision again, where in that case, the content of the letter was actually very similar. And the court held in its opinion that the criticisms of the employer were intertwined with the actual protected expression of grievances as they were here. When Miss Young was criticizing the hospital, it was part of her protected conservative and protected union activity in supporting and raising these grievances about staffing issues shared with her co-workers. Thank you. Are there any more questions for Mr. Weitz? Thank you. Thank you. Mr. Weitz, if you could mute, please. And at this time, would Attorney Randlett please unmute his device? And you have three minutes of rebuttal time, please introduce yourself on the record. Good afternoon, again, your honors. This is Josh Randlett on behalf of the respondent. I have a couple of quick points that I want to make. And then I want to turn to this motive analysis that Judge Barron was just asking about. The two quick points. First, Attorney Weitz said that there's evidence in the record that Miss Young had communicated with nurses about their patient loads. That is absolutely not in the record. Even if we're to assume that what she testified about was a conversation that she was a party to, there's no testimony in the record that she had any interactions with bargaining unit employees or nurses. The testimony about patient loads related to CNAs, who are not nurses and are not members of the bargaining unit. So that follows up on Judge Smith's points earlier about how a lot of these other cases where an employee makes a press release or goes to the newspaper, they've had some interaction with the bargaining unit. We don't have any evidence of that whatsoever here. In fact, her evidence was that the first time she ever heard of this petition or the complaints that the nurses had raised therein was when she read it in the newspaper. So that's my first quick point. The second quick point relates to the status of EMHS. The record, if you look at very closely, the General Counsel's first motion was to add EMHS as a party respondent, which was objected to. Then after a colloquy off the record, the General Counsel came back and the record will show either he or the judge referred to it as an amended motion to an amend, and that the amended motion to amend was to change the name of the respondent, still singular, not plural, the respondent to clarify that Eastern Maine Health Care Systems is a sole member of Maine Coast Memorial Hospital, which is not disputed. None of that added EMHS as a party to this case. So what do you say to Judge Barron's point that, well, okay, if they weren't added, then they're not added. They didn't appeal. You've twice told us you're appearing today here on behalf of the respondent singular. Isn't what they have to do is just, I guess, not comply with the order and have an enforcement action brought and they will win if they weren't subject to an order? Well, that's the very point, Your Honor. The board's decision in the order, requires Maine Coast to go into the properties and systems of other people who are not, or other entities who are not parties to this. And have they appealed that in this case? I don't see any brief or brief submitted on behalf of them. No, but Your Honor, Maine Coast has, and it's a problem for Maine Coast. If they are required under the order to go onto the properties or systems of others and do things that they may not have the ability to do on pain of contempt, then that puts them in a very difficult and unfortunate situation where either they have to go do something that they might not be permitted to do or potentially face a contempt action. So it does matter to Maine Coast. That's time. Your Honor, may I very briefly respond to Judge Barron's earlier question about the mixed motive? Judge Barron, you had asked about the mixed motive analysis. We did raise this in section three of our blue brief, which relates to the 8A1 charge. And in my view, under the reading of the General Motors case, which came out after our case was decided, when there's a question about whether or not the discharge was motivated by protected activity or abusive ad hominem attacks, then you have to get into this mixed motive analysis. I understand that. I'm just asking a different question. Do you have any answer to the, I thought you were making a threshold argument, which is made just with respect to 8A3, that you had a business purpose in firing her because she was criticizing the hospital. That itself is not union based. I understand the NLRB to be saying back, you just misunderstanding how the law applies here. If the activity you've identified is writing the letter and that letter as a whole is focused on union activity, which I know you dispute, but granting that it is, if it is, it doesn't matter that you say, no, we were just because she was criticizing us. I think that the motive matters in two different ways. One way that relates to 8A3 and one way that relates to 8A1. For the 8A3, when the employer provides a legitimate business justification for the action that they took, the board then has to evidence that there was an anti-union motivation for that action. That's the 8A3 just based purely on terms of the statute. What do you say about the NLRB's response that they just gave saying that's not right? They just cited cases saying that that's not how it works because if the inherent in the activity you identified is union activity, then you don't get to do that. Well, and that gets back to the earlier question that I was about to raise. They talk about union activity and it's not entirely clear what that means because the statute in the case law does not talk about union activity. It talks about assisting the union, forming, joining, those sorts of things. There's no evidence here that she assisted, so it's not even clear what the Randlett and Whites. You should disconnect from the hearing at this time.